**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ALENA GERHARDT,
TYRIN PACHECO,**

**Plaintiffs,**

**v.**                                                    **2:25-cv-00110-DHU-GBW**

**THE CITY OF HOBBS,
MATTHEW OLENICK,
ANDREW LANE,
ALEJANDRO RIVAS,
VALERIE CHACON, and the
FIFTH JUDICIAL DISTRICT
ATTORNEY'S OFFICE,**

**Defendants.**

**<u>PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANT
VALERIE CHACON'S MOTION FOR SUMMARY JUDGMENT ON
THE BASIS OF PROSECUTORIAL AND QUALIFIED IMMUNITY
(DKT. 67) AND DEFENDANT FIFTH JUDICIAL DISTRICT
ATTORNEY'S OFFICE'S MOTION FOR JUDGMENT ON THE
PLEADINGS (DKT. 64)</u>**

Plaintiffs Alena Gerhardt ("Gerhardt") and Tyrin Pacheco ("Pacheco") (collectively, "Plaintiffs"), through undersigned counsel, file this omnibus[1] opposition to Defendant Valerie Chacon's ("Chacon") Motion for Summary Judgment on the Basis of Prosecutorial and Qualified Immunity (Dkt. 67, the "MSJ") and the Fifth Judicial District Attorney's Office's ("DAO") Motion for Judgment on the Pleadings (Dkt. 64, the "MJOP").

---

[1] Although the motions are brought by different defendants and are evaluated under different standards, the legal issues they raise have considerable overlap. For efficiency and ease of reading, Plaintiffs respond in omnibus form.

## I.    INTRODUCTION

One day, a Wyoming police officer was on vacation in Colorado when she saw a suspicious looking man run out of a house. Thinking the person was a burglar, the police officer took out a gun, pointed it at the man, yelled "Police! Stop!" and then detained the suspect at gunpoint until Colorado police officers arrived. But it turned out the guy was not a burglar, and he sued the Wyoming cop under 42 U.S.C. § 1983. May she invoke qualified immunity?

That question was presented in *Becerra v. Schultz*, No. 19-CV-118-SWS, 2020 WL 13564062 (D. Wyo. July 14, 2020), and the court held the answer was 'no.' "As an off-duty, out-of-state police officer on vacation, [the cop] in effect acted as a private citizen on her own volition when she held Plaintiff at gunpoint." *Id*. at \*6. That result makes sense—doctrines such as qualified immunity and prosecutorial immunity exist to protect the discretionary exercise of government power. Thus, those defenses are only available when the defendant has authority to act on the government's behalf.

And that brings us to "Special Assistant District Attorney" Valerie Chacon. On January 6, 2025, Chacon filed an entry of appearance in New Mexico district court, purporting to represent the State of New Mexico in a DWI prosecution of Gerhardt. On January 7, 2025, Chacon filed a "Motion to Expedite" that asked the court to conduct a trial within 10 days, and implied Gerhardt did not have an attorney.

2

There were, however, problems with Chacon's motion. First, Chacon knew Gerhardt was represented by counsel. Second, Chacon knew pretrial matters were not complete. And third, Chacon had no authority to represent the state. Although the DAO knew what Chacon was doing and encouraged her to do it, Chacon had not taken the oath of office New Mexico law required. She was, like a Wyoming cop in Colorado, acting without any colorable claim to authority.

This case is not about second-guessing charging decisions. Or even about prosecutorial misconduct, as that would require a real prosecutor. Rather, the central questions in this case are: (1) whether Chacon could wield state power without having taken an oath to do so lawfully; and (2) whether the DAO can claim immunity for a prosecution it long ago disavowed. As discussed below, the Court should find against Defendants on both issues and deny the MSJ and MJOP.

## II.    PLAINTIFFS' RESPONSE TO CHACON'S UNDISPUTED MATERIAL FACTS

Plaintiffs respond as follows to Defendant Chacon's undisputed material facts ("DUMF"):

**DUMF No. 1:** Undisputed.

**DUMF No. 2:** Undisputed.

**DUMF No. 3:** Disputed. The City of Hobbs charged Gerhardt and Pacheco with ordinance violations in Hobbs Municipal Court. That case was dismissed and never refiled. The State of New Mexico then charged

Gerhardt and Pacheco with violations of the New Mexico penal code in district court.

**DUMF No. 4:** Disputed. *See* DUMF No. 3.

**DUMF No. 5:** Undisputed.

**DUMF No. 6:** Undisputed that on January 3, 2025, District Attorney Dianna Luce ("Luce") sent Chacon an email that said, "I appointed you as Special Assistant District Attorney." Dkt. 67-3. Disputed that this made Chacon a Special Assistant District Attorney. *See* NMSA Section 36-1-23.1, ("[a]n appointment and oath shall be required of special assistant district attorneys in substantially the same form as that required for assistant district attorneys[.]"); Section 36-1-2 NMSA 1978, (appointment and oath "must be file[d] … before [the appointee] enter[s] upon his duties as assistant district attorney."); *State v. Surratt*, 2016-NMSC-004, ¶ 22 ("a special prosecutor[] [has] authority to act in a given case provided an appointment is made *and an oath taken*." (Emphasis added)). Accordingly, Chacon was not appointed until January 10, 2025, when the oath was taken and the appointment was filed.

**DUMF No. 7:** Disputed. Chacon did not take the oath or file the appointment until January 10, 2025. *See* Dkt. No. 67-9, 67-10.

**DUMF No. 8:** Undisputed that Chacon sent the email 45 minutes prior to the arraignment. 67-11 at page 2. Her motive is, however, disputed. In deposition, Chacon testified she learned about the

4

arraignment the morning of January 7. *See* Exhibit 1 to attached Declaration of Benjamin Gubernick ("Gubernick Decl.") at 62:3 – 64:19. However, on January 6, 10:27 AM, Luce emailed Chacon to let her know "[t]he Gebhart [sic] case is set for a first appearance with Judge Kirksey at 12:45 tomorrow." Gubernick Decl. Ex. 2. Additionally, the Motion to Expedite makes no mention of Gerhardt having an attorney—if anything, it implies the opposite. Gubernick Decl. Ex. 3. And 8 days earlier, Chacon's assistant falsely claimed to Plaintiff's counsel that the case was "closed out on [the City's] side." Gubernick Decl. Ex. 4. The suggestion that Chacon was concerned about notifying Plaintiff's counsel is contradicted by the evidence.

### III.    PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS

Plaintiffs designate the following additional undisputed facts ("PUMF") as material to the MSJ's resolution.

**PUMF No. 1:** The city dismissed the municipal court cases in response to Gerhardt filing a motion to suppress evidence. Dkt. 70-1 at ¶¶ 6-7 (cases dismissed same day motion to suppress filed).

**PUMF No. 2:** Chacon knew by December 11, 2024, that Plaintiffs intended to sue the City of Hobbs for violating their rights. Gubernick Decl. Ex. 5.

**PUMF No. 3:** While City Attorney, Chacon allowed her prosecutorial decisions to be influenced by the City's financial interests. Gubernick Decl. Ex. 1 at 118:8 – 119:17.

**PUMF No. 4:** On December 11, 2024, Plaintiffs' counsel emailed Chacon's assistant to find out why access to discovery files in Plaintiffs' cases had been revoked. Chacon's assistant responded that the case was closed. Gubernick Decl. Ex. 5.

**PUMF No. 5:** At the time the district court case was filed, Chacon knew Plaintiffs were represented by counsel. Gubernick Decl. Exs. 4, 5.

**PUMF No. 6:** Chacon did not take the oath of office until January 10, 2025. Dkt. No. 67-9, 67-10.

**PUMF No. 7:** The Motion to Expedite filed by Chacon on January 7, 2025, represented that an expedited trial setting was appropriate because "[t]he Defendant has conducted pretrial interviews and pretrial hearings." Gubernick Decl. Ex. 3.

**PUMF No. 8:** At the time she filed the Motion to Expedite, Chacon knew Plaintiffs had raised an unresolved suppression issue in the municipal court case. Dkt. 70-1 at ¶¶ 6-7.

**PUMF No. 9:** The Motion to Expedite represented that an expedited trial setting was appropriate because "New Mexico Courts records does not show the Defendant as having counsel at this time." Gubernick Decl. Ex. 3.

**PUMF No. 10:** The Motion to Expedite falsely certifies that the document was served on Gerhardt or her counsel. Gubernick Decl. Ex. 3.

6

**PUMF No. 11:** The entry of appearance filed by Chacon on January 6, 2025, falsely certifies that the document was served on Gerhardt or her counsel. Gubernick Decl. Ex. 6.

**PUMF No. 12:** The DAO's role in the district court case was purely administrative. Dkt. 16 at ¶¶ 82-83, 86.

## IV.   LEGAL STANDARDS

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only if the movant meets its burden is the nonmovant required to point the court to evidence showing a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must "review the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir. 2001).

Judgment on the pleadings is only appropriate when the factual allegations in the complaint fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"[W]hether to grant a prosecutor absolute immunity requires courts to take a functional approach, wherein they examine the nature of the function performed, not the identity of the actor who performed it." *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) (quotation marks and citations omitted).

To prevail against a qualified immunity motion, a plaintiff must show: (1) the defendant violated a constitutional right; and (2) the violated right was "clearly established at the time" of the alleged unlawful activity. *Cox v. Glanz*, 800 F.3d 1231, 1246 (10th Cir. 2015).

## V. ARGUMENT

### A. Neither Defendant is entitled to absolute immunity

The MSJ and the MJOP are built around the same syllogism:

- Chacon performed prosecutorial functions; AND
- Prosecutors have absolute immunity when performing prosecutorial functions; THEREFORE
- Chacon has absolute immunity.

But that logic is flawed. Just as performing "quintessential police functions" does not automatically make someone a police officer, *Becerra*, 2020 WL 13564062, at *4, performing prosecutorial functions does not automatically make someone a prosecutor. *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("Prosecutors are absolutely immune for quasi-

judicial activities taken *within the scope of their authority*." (Emphasis added)); *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("A defendant engaged in advocative functions will be denied absolute immunity only if he acts without any colorable claim of authority.").

The authority requirement matters. Under binding Tenth Circuit precedent, "a prosecutor … lose[s] absolute immunity when he acts with a complete and clear absence of authority[.]" *Snell v. Tunnell*, 920 F.2d 673, 694 (10th Cir. 1990). The putative prosecutor must have at least "an arguable basis of authority grounded in a statute." *Id. See also*, *Bernard*, 356 F.3d at 504 ("[W]here a prosecutor is sued under § 1983 for unconstitutional abuse of his discretion to initiate prosecutions, a court will begin by considering whether relevant statutes authorize prosecution for the charged conduct. If they do not, absolute immunity must be denied."). And here, prior to January 10, 2025, Chacon had no such basis.

New Mexico law sets out straightforward, non-onerous requirements for special prosecutor appointments:

> Each district attorney may, when he cannot prosecute a case for ethical reasons or other good cause, appoint a practicing member of the bar of this state to act as special assistant district attorney. Any person so appointed shall have authority to act only in the specific case or matter for which the appointment was made. An appointment and oath shall be required of special assistant district attorneys in substantially the same form as that required for assistant district attorneys in Section 36-1-2 NMSA 1978.

N.M. Stat. Ann. § 36-1-23.1.[2] "The statute places no … constraints on a special prosecutor's authority to act in a given case *provided an appointment is made and an oath taken*." *Surratt*, 2016-NMSC-004 at ¶ 22 (emphasis added).

The oath of office for special prosecutors is found in the New Mexico Constitution:

> Every person elected or appointed to any office shall, before entering upon his duties, take and subscribe to an oath or affirmation that he will support the constitution of the United States and the constitution and laws of this state, and that he will faithfully and impartially discharge the duties of his office to the best of his ability.

N.M. Const. art. XX, § 1. This is the same oath "prescribed by law for district attorneys before entering upon his duties as assistant district attorney." N.M. Stat. Ann. § 36-1-2.

The oath requirement is not a mere technicality. As the New Mexico Supreme Court has explained, "the rationale for requiring authorization for prosecution is to avoid prosecution by persons who are not held accountable or subject to the oath of office." *State v. Cherryhomes*, 1996-NMSC-072, ¶ 6 (quotation marks omitted).

The present matter shows that *Cherryhomes*' concerns about accountability were well-founded. Quoting from the DAO's Amended Answer:

> Defendant affirmatively states that on January 6, 2025, Valerie Chacon had not yet completed the required

---

[2] Notably, the MSJ and MJOP make no mention of the statute.

> appointment and oath procedures under New Mexico law (N.M. Stat. Ann. §§ 36-1-2 and 36-1-23.1) to act as a Special Assistant District Attorney. Therefore, any actions taken by Ms. Chacon on that date, including the preparation and filing of the Entry of Appearance, were unauthorized and outside the scope of any authority granted by the Fifth Judicial District Attorney's Office. Defendant was not involved in those actions and denies any responsibility for them.

Dkt. 16 at ¶ 88. *See also, id.* at ¶ 111 ("The Fifth Judicial District Attorney's Office did not instruct or authorize Chacon to act in bad faith, and any actions taken by Ms. Chacon on January 6, 2025, were outside her lawful authority as she had not yet been duly appointed and sworn in.").

According to its Amended Answer, the DAO was not even performing a discretionary function when it prepared and filed the charging documents against Plaintiffs:

> Defendant clarifies that [Deputy District Attorney] Megan Kirtley signed the criminal informations in the usual course of office procedures and that such actions were taken by the Fifth Judicial District Attorney's Office as part of its normal operations. Defendant further clarifies that while the Fifth Judicial District Attorney's Office may have signed and filed the criminal informations, the prosecution of these cases was handled independently by Valerie Chacon, acting as Special Assistant District Attorney.

*Id.* at ¶ 83. Indeed, the DAO has disavowed any role beyond ministerial paper-pushing:

> Defendant clarifies that Valerie Chacon, acting independently as a Special Assistant District Attorney, was responsible for the prosecution of these cases. The Fifth Judicial District Attorney's Office provided case management support, but Chacon's prosecutorial decisions were made independently and without direction or control from the DA's Office. As such,

11

the Fifth Judicial District Attorney's Office denies any direct involvement in the prosecutorial actions taken in these cases.

*Id*. at ¶ 82.

For sure, the DAO has recently attempted to backtrack from that position. The MJOP claims "[t]here can be no argument here that Defendant Chacon ... was acting in any other capacity than as an advocate" for the state. MJOP at 5.  However, the timing of the DAO's change of heart is suspect, to say the least. The Amended Answer was filed on May 1, 2025, one month *before* the New Mexico Supreme Court ruled in *Bolen v. New Mexico Racing Comm'n*, 2025-NMSC-034, that prosecutorial immunity is available in New Mexico Civil Rights Act cases.

This procedural history shows why compliance with the special-prosecutor statute is required. The DAO pleaded that pre-oath conduct was unauthorized, outside scope, and contrary to instructions. But now, post-*Bolen*, the MJOP tries to retroactively treat the same conduct as protected prosecutorial action. That is exactly the accountability shell game the appointment and oath requirements exist to prevent.

It is axiomatic that "absolute prosecutorial immunity is intended to protect the judicial process, not the prosecutor." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1208 (10th Cir. 2022). Accordingly, the Supreme Court has "been quite sparing in [its] recognition of absolute immunity, and ha[s] refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991). Allowing the doctrine's

application to hinge on strategic expediency does not protect the judicial process; it undermines it.

Everyone agrees Chacon did not take *any* oath of office prior to January 10, 2025, let alone an oath "in substantially the same form as that required for assistant district attorneys[.]" N.M. Stat. Ann. § 36-1-23.1. It is also undisputed that the DAO provided Chacon with "case management support." Additionally, the record supports the inference that Chacon was aware of the oath requirement but disregarded it, and that Luce was monitoring the filings in Gerhardt's case and thus aware that Chacon had not taken the oath. From those facts and inferences, a reasonable jury could find that Chacon illegally prosecuted Plaintiffs, and that the DAO encouraged and supported her misconduct.

In summary, the special prosecutor statute "does not, as Defendant[s] would otherwise suggest, deputize private citizens and authorize them to enforce public law. Instead, it affords immunity to a private citizen who, under a carefully tailored set of circumstances, acts in the public's welfare." *Becerra*, 2020 WL 13564062 at *8. Immunity applies to duly authorized prosecutors. But neither the pleadings nor evidence establish that Chacon was one when the challenged conduct occurred. The MSJ and MJOP should be denied.

### B. Chacon's qualified immunity defense fails.

### 1. Chacon is not entitled to assert qualified immunity.

As a threshold matter, the two-part qualified immunity "analysis can only proceed after the court determines that a defendant is entitled to assert qualified immunity in the first instance." *Weise v. Casper*, 507 F.3d 1260, 1264 (10th Cir. 2007). And for the reasons already discussed, Chacon is not entitled to assert qualified immunity.

Until she took the oath of office on January 10, 2025, Chacon had no authority at all to advocate for the State of New Mexico. Likewise, enforcement of state criminal statutes is outside a city attorney's bailiwick. *See Howard v. City of Rochester*, 771 F. Supp. 3d 211, 218 (W.D.N.Y. 2025) (to have immunity, a prosecutor must have "at least a semblance of jurisdiction that does not run far afield of his job description." (Quotation marks omitted)). Chacon held herself out as having authority and acted like she did, but that is insufficient. The Supreme Court "never has held that the mere performance of a governmental function could make the difference between unlimited § 1983 liability and qualified immunity, especially for a private person who performs a job without government supervision or direction. Indeed a purely functional approach bristles with difficulty[.]" *Richardson v. McKnight*, 521 U.S. 399, 408–09 (1997).

It bears emphasis: the policy objectives behind qualified immunity are simply not implicated here. The doctrine exists to:

14

> (1) "to protect government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good," (2) "to ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service," and (3) to protect "the public from unwarranted timidity on the part of public officials."

*Mejia v. City of New York*, 119 F. Supp. 2d 232, 264 (E.D.N.Y. 2000)

(quoting *Richardson*, 521 U.S. at 408). With those goals in mind, *Becerra*

is once again instructive:

> Officer Schultz was off-duty, knowingly outside her jurisdiction (in another state), and not acting upon the request of authorities or in response to a public request or emergency, but rather on her own volition. Imposing liability in this context would not interfere with the government's ability to perform its duties given Officer Schultz was in effect acting as a private citizen who took action at her own risk. For the same reason, imposing liability in this context would not deter qualified candidates from entering public service. A police officer acting in their official capacity within their authorized jurisdiction (and thus pursuant to their governmental office and responsibilities) who made a similar warrantless arrest based upon a probable cause belief that a crime was committed would still be afforded qualified immunity.
>
> Further, providing immunity under the specific circumstances presented in this case would not serve to protect the public from unwarranted timidity. There are strong public policy reasons for requiring some hesitancy on the part of a private citizen temporarily acting for the benefit of the public while making an arrest, particularly where a firearm is involved. Indeed, because a private citizen's discretion to make an arrest is limited, it follows that so too should their immunity from liability when voluntarily performing a "governmental function" in this capacity. … In sum, shielding Officer Schultz from suit would not advance the policies underlying the doctrine of qualified immunity on the facts presented in this case.

2020 WL 13564062 at \*7. The same is true here. New Mexico law lays out a simple, bright-line rule for those who wish to wield the state's coercive power: take an oath of office. When Chacon decided to forgo that requirement, she did so at her peril. The Court should hold that the defense of qualified immunity is unavailable to Chacon.

**2. Plaintiffs have alleged a violation of clearly established constitutional rights.**

Although the Court need not reach the two-part test for qualified immunity, Plaintiffs will address both prongs for completeness.

### a. Constitutional violations

Count III alleges that Chacon deprived Plaintiffs of their right to due process and right to counsel. Dkt. 1 at 153-57. More specifically, Plaintiffs allege that Chacon pursued baseless charges, made materially misleading statements to the district court about whether Plaintiffs were represented, sought an expedited trial before meaningful notice, falsely represented to Plaintiffs' counsel that the cases against Plaintiffs were closed, and prosecuted Plaintiffs in district court without authority. *Id.*

If proven, those are constitutional violations. Malicious prosecution claims are routinely based on material misrepresentations calculated to mislead a judge. *See e.g. Hinman v. Joyce*, 201 F. Supp. 3d 1283, 1300 (D. Colo. 2016). Ditto pursuing criminal charges unsupported by probable cause. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). And along the same lines, the Supreme Court has recognized that the Sixth

Amendment imposes an affirmative obligation on the government "not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Maine v. Moulton*, 474 U.S. 159, 170–71 (1985).

The MSJ appears to argue that a Sixth Amendment violation is impossible because the district court cases never reached a "critical stage." MSJ at 7. But that is wrong as a matter of law. Of course, the Sixth Amendment does protect the right to "have counsel present at all critical stages of the criminal proceedings." *Acosta v. Raemisch*, 877 F.3d 918, 931 (10th Cir. 2017) (quotation marks deleted). But the Sixth Amendment protects other things as well. *See e.g. United States v. Stein*, 541 F.3d 130, 154 (2d Cir. 2008) ("[T]he government violates the Sixth Amendment when it intrudes on the attorney-client relationship, preventing defense counsel from participating fully and fairly in the adversary factfinding process." (Quotation marks omitted)). Moreover, it is well-established that the right to counsel attaches at "[t]he initiation of judicial criminal proceeding[.]" *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).

Here, Plaintiffs' right to counsel began when they were formally charged in municipal court and continued until the dismissal of their district court cases. That is because "dismissal of an indictment against a defendant does not bring an end to the prosecution of the defendant if the defendant is later reindicted on charges which 'grow out of the same

17

dealings that were the subject of the [prior] charges.'" *United States v. Marshank*, 777 F. Supp. 1507, 1526 (N.D. Cal. 1991) (quoting *United States v. Valencia*, 541 F.2d 618, 622 (6th Cir. 1976)).

The MSJ's other constitutional violation arguments require the Court to decide factual disputes, which it cannot do at this juncture.

First, the MSJ contends Chacon cannot be liable on a malicious prosecution theory because she "never filed any charges against either Plaintiff" and "only assisted in pursuing the already filed charges." MSJ at 8. But according to the DAO, "while the Fifth Judicial District Attorney's Office may have signed and filed the criminal informations, the prosecution of these cases was handled independently by Valerie Chacon, acting as Special Assistant District Attorney." Dkt. 16 at ¶ 83. Additionally, the record reflects coordination between Chacon and Luce long before Chacon filed entries of appearance. *See* Dkt. 67-3 at page 3-4. These facts create a triable issue on Chacon's role in filing the district court cases.

Likewise unpersuasive is Chacon's insistence that she "alerted … Plaintiffs' undersigned counsel as a courtesy, without knowing for sure if they continued representation in the 'new' cases[.]" MSJ at 8. Based on the communications Plaintiffs' counsel had with Chacon and her subordinates in December 2024, a reasonable jury could find Chacon did know "for sure" that Plaintiffs were represented.

Additionally, Chacon's motive for sending the January 7, 2025, email is very much in dispute. Prior to January 7, none of the documents filed in Gerhardt's case made any mention of undersigned counsel. Yet, a district court clerk called the undersigned on the morning of January 7, shortly before Chacon's email arrived. Dkt. 70-1 at ¶¶ 11-13. The only plausible explanation is the district court clerk saw the word "refiled" on the probable cause statement and called the city attorney's office to find out if Gerhardt was represented in the municipal court case. Based on that, a reasonable jury could find that Chacon realized her scheme to keep the arraignment secret had likely failed and sent the email to cover up the scheme's existence.

The MSJ's final argument is straight out of George Orwell: "Plaintiffs' counsel should have signed up for electronic service regarding their district court criminal cases." MSJ at 8. *See also, id.* (claiming that Plaintiffs' "counsel failed to enter their appearance or add themselves to the service list in Plaintiffs' district court proceedings."). The MSJ, however, provides no explanation for how Plaintiffs' attorneys could have "signed up for electronic service" in a case they did not know existed, or how that could possibly nullify a constitutional violation.

### b. Clearly established law.

Turning to the clearly established law prong, the MSJ argues that no clearly established law put her on notice that she was violating Plaintiffs' Sixth Amendment rights.

19

Plaintiffs acknowledge that these facts are bizarre. However, it is well-established that, if a lawyer wants to prosecute someone, a colorable claim to actual authority is required. *Snell*, 920 F.2d at 694; *Bernard*, 356 F.3d at 504. And as already discussed, drawing all reasonable inferences in Plaintiffs' favor, Chacon knew she had no authority yet plowed forward anyway.

Finally, the "clearly established" section of the MSJ fails to even mention Plaintiffs' due process claim against Chacon. "[W]ithout citation to any legal authority or other reasoning, [Chacon's] perfunctory assertion of qualified immunity in this way is insufficient." *Berryman v. Niceta*, 143 F.4th 1134, 1142 (10th Cir. 2025). And in any event, as already discussed, it is beyond dispute that charging someone without authority or without arguable probable cause violates due process. Drawing all reasonable inferences in Plaintiffs' favor, Chacon did both those things here.

### C. The MJOP's request for a discovery stay.

Plaintiffs do not object to the DAO's request to stay discovery.

## VI.   CONCLUSION

For the foregoing reasons the MSJ and MJOP should be denied.

Respectfully submitted,

[Signature on next page]

20

WGLA, LLP

*/s/ Benjamin Gubernick___*
Benjamin Gubernick
Curtis Waldo
717 Texas Ave. Suite 1200
Houston, TX 77002
ben@wglawllp.com
curtis@wglawllp.com
(346) 277-0287
(713) 306-0512

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I caused this document to be served on counsel for Defendants on June 5, 2026.

*/s/ Benjamin Gubernick*
Benjamin Gubernick